## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

LEDALE NATHAN, )
       )
      Petitioner, )
       )
      vs. )     Case No. 1:19-CV-152 JSD
       )
DAVID VANDERGRIFF, Potosi )
Correctional Center, )
       )
and )
       )
ANDREW BAILEY, Missouri Attorney )
General, )
       )
      Respondent. )

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Ledale Nathan's ("Nathan") Amended Petition under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody (ECF No. 36).[1] Respondents have filed a response. (ECF No. 37).[2] Nathan  filed a traverse. (ECF No. 68). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

## I.    BACKGROUND

---

[1] Nathan filed original Petition under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody (ECF No. 1) on September 3, 2019. He filed his Amended Petition on December 20, 2022. (ECF No. 36)."Because Petitioner's Amended [Petition] supersedes his original Petition, the undersigned will only address the Amended [Petition] and recommend that Petitioner's original Petition be denied as moot." *Crawford v. Lewis*, No. 416CV01044RWSNCC, 2019 WL 4606791, at *2 (E.D. Mo. May 8, 2019), report and recommendation adopted sub nom. *Crawford v. Wallace*, No. 4:16 CV 1044 RWS, 2019 WL 4600632 (E.D. Mo. Sept. 23, 2019) (citing *In re Wireless Tel. Fed. Cost Recovery Fee Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect.")).

[2] According to the Missouri Department of Corrections website, Nathan currently serves his sentences in the Potosi Correctional Center, where David Vandergriff is the current warden. *See* Fed. R. Civ. P. 25(d); https://web.mo.gov/doc/offSearchWeb/offenderInfoAction.do. Because Nathan has future consecutive sentences that have not started, Andrew Bailey, the Attorney General of Missouri, is also a proper respondent.

This Court and other courts[3] have previously provided a background of this litigation, which is briefly summarized here:

> Shortly after midnight on October 5, 2009, Nathan and his accomplice, Mario Coleman, emerged from a vehicle and approached off-duty police officer Isabella Lovadina and Nicholas Koenig, who were standing in front of the house where Koenig's grandmother[,] Ida Rask[,] lived. Nathan was carrying a "silver" pistol, and Coleman was armed with a "black" pistol. Both pointed their guns at Lovadina and Koenig, ordering them to turn over their belongings. Nathan and Coleman forced the two inside the [sic] Rask's house. At the time, Rask, her daughters Rosemary Whitrock and Susan Koenig (Nicholas' mother), Whitrock's daughter Gina Stallis, and Stallis' two young children all were sleeping in the house. Coleman held Lovadina and Koenig at gunpoint while Nathan rounded up the remaining victims on the second floor, including Gina Stallis.
>
> Nathan and Coleman took jewelry from the dressers and jewelry boxes, removed jewelry from the victims, and took money from purses. Both Nathan and Coleman threatened to kill several victims, including specifically Stallis and Whitrock, and emphasized these threats by pointing their guns in the victims' faces. Nathan ordered Stallis, at gunpoint, to carry a large television down from the second floor. A short time later, he ordered Stallis to go to the basement. Stallis turned on a light as she walked toward the basement, but Nathan immediately told her to turn it off. Seeing that Nathan was herding the victims into the basement (where they might be executed or assaulted further), Officer Lovadina moved towards the hallway where the basement door was located and offered to go to the basement instead of Stallis. Coleman moved to stop Lovadina, bringing the two of them—and Koenig, Stallis and Nathan—together in close proximity to each other in or near the hallway near the basement door.
>
> At this point, Officer Lovadina charged Coleman in an attempt to disarm him. Nathan moved to help Coleman ward of Lovadina but was attacked by Koenig. Seven gunshots were heard during this brief fight, which ended with the shooter firing the final shots directly into Lovadina as she lay on the floor. Nathan and Coleman fled, abandoning Lovadina and Koenig, who had been hit five and three times respectively, and Stallis, who lay dead from a single gunshot wound in her chest.
>
> Coleman took Nathan to the hospital because he had been shot in the hand during the melee. There, Nathan told the x-ray technician to get rid of the red "hoodie" that Nathan had been wearing during the robbery. Nathan lied to the police about his gunshot wound, giving incomplete and contradictory answers to their questions. Outside the hospital, the police approached Coleman, who attempted to throw away the black pistol and several items of jewelry taken from the victims. The police found Nathan's silver pistol, with an empty 7-shot clip, in Coleman's car. Nathan's DNA was found on the grip of this pistol, and Officer

---

[3] *See generally State v. Nathan*, 404 S.W.3d 253, 256 (Mo. 2013);  *Nathan v. Lewis*, No. 1:19-CV-00152-DDN, 2019 WL 4576306, at *1–2 (E.D. Mo. Sept. 20, 2019).

> Lovadina's blood was found spattered on the outside and inside of the barrel. All of the bullets removed from Lovadina and Stallis, and the seven shell casings found in the hallway of the home, came from this silver pistol.

(ECF No. 37-17 at 3-4)

Notably, Nathan committed these crimes when he was 16 years old, legally a juvenile, but was certified and prosecuted as an adult. R.S. Mo. § 211.071 provides the means of transferring a juvenile to the jurisdiction of the circuit court.

Following a jury trial on April 11, 2011, Nathan was found guilty of twenty-six criminal counts: one count for the first-degree murder of Gina Stallis; thirteen counts of armed criminal action; five counts of kidnapping; four counts of first-degree robbery; two counts of first-degree assault; and one count of first-degree burglary. *State of Missouri v. Nathan*, No. 1022-CR01659 (22nd Cir., St. Louis City). However, the circuit court subsequently dismissed counts IX, X, XXIII, and XXIV for lack of jurisdiction. The circuit court determined that these four counts, representing offenses against victim Rosemary Whitrock, were never before the juvenile court, and thus could not be transferred to the circuit court. Nathan was sentenced to life without probation or parole on the first-degree murder count, and also received sentences ranging from fifteen years to life on the remaining twenty-one counts.

On direct appeal, the Missouri Supreme Court remanded the first-degree murder conviction for resentencing in light of the holding in *Miller v. Alabama*, 567 U.S. 460 (2012), which held that a mandatory sentence of life without parole for a juvenile offender was unconstitutional. *State v. Nathan*, 404 S.W.3d 253, 269-71 (Mo. 2013). The Missouri Supreme Court explained that, on remand, if the sentencer "was persuaded beyond a reasonable doubt" that life without parole for first-degree murder was appropriate, then said sentence was constitutional and must be imposed. *Id.* at 270-71. However, if the sentencer was not convinced that life without parole was

appropriate, then the circuit court was required to enter a finding of guilt on second-degree murder, and enter a lesser sentence accordingly. *Id.* at 271. The Missouri Supreme Court also determined that the circuit court had improperly dismissed the four Whitrock counts and remanded those counts for sentencing. *Id.* at 259-60.

On November 18, 2013, after the Missouri Supreme Court ordered resentencing, but before said resentencing could take place, Nathan filed his first postconviction motion pursuant to Mo. S. Ct. R. 29.15. *Nathan v. State of Missouri*, No. 1322-CC09963 (22nd Cir., St. Louis City). The motion challenged the twenty-one counts that had been affirmed by the Missouri Supreme Court in *State v. Nathan*, 404 S.W.3d 253 (Mo. 2013).

On July 25, 2014, the circuit court resentenced Nathan to life imprisonment for second-degree murder. He was also sentenced on the four Whitrock counts. *State of Missouri v. Nathan*, No. 1022-CR01659 (22nd Cir., St. Louis City). He filed a notice of appeal on July 30, 2014.

While that appeal was pending, the circuit court denied Nathan's Rule 29.15 motion on August 1, 2016. *Nathan v. State of Missouri*, No. 1322-CC09963 (22nd Cir., St. Louis City). He filed a notice of appeal as to the denial of his Rule 29.15 motion on August 16, 2016.

On November 17, 2015, the Missouri Court of Appeals affirmed the circuit court's sentencing decisions regarding Nathan's convictions for second-degree murder and the four Whitrock counts. *State v. Nathan*, 2015 WL 725338, at *1 (Mo. App. 2015). The case was ordered transferred to the Missouri Supreme Court on April 5, 2016. Thereafter, on July 11, 2017, the Missouri Supreme Court affirmed the judgment of the circuit court. *State v. Nathan*, 522 S.W.3d 881, 894 (Mo. 2017).

Nathan filed a second motion for post-conviction relief on October 13, 2017. *Nathan v. State of Missouri*, No. 1722-CC11525 (22nd Cir., St. Louis City). The second motion for post-conviction relief pertained to the murder count and the four Whitrock counts.

Meanwhile, Nathan's appeal of the denial of his first post-conviction motion was affirmed by the Missouri Court of Appeals on June 19, 2018. *Nathan v. State*, 556 S.W.3d 99, 100 (Mo. App. 2018). Nathan's motion for rehearing and/or transfer to the Missouri Supreme Court was denied on July 24, 2018. His application for transfer to the Missouri Supreme Court was denied on September 25, 2018. The mandate was issued September 28, 2018.

Nathan's second post-conviction proceeding, regarding the murder count and the four Whitrock counts, was denied in an unpublished opinion on March 1, 2022.

Nathan is incarcerated under the Missouri state prisoner system at the Potosi Correctional Center. Nathan filed his Petition for Writ of Habeas Corpus with this Court on September 3, 2019 (ECF No. 1) and then filed an Amended Petition at the conclusion of state-court proceedings. (ECF No. 36). On January 18, 2023, Respondents filed their Response to the Amended Petition (ECF No. 37).

Nathan raised the following claims in his original and amended petitions:

Ground 1: The juvenile court violated due process by transferring jurisdiction to the adult courts.

Ground 2: The prosecutor committed a *Brady* violation by not disclosing that a witness had two municipal ordinance violations.

Ground 3: The trial court violated Nathan's right to confront and cross-examine witnesses when defense counsel learned before trial that a witness' medical records would show a history

of substance abuse, but the trial court refused to allow disclosure of this information and prohibited questioning about it.

Ground 4: The trial court violated due process by convicting Nathan of charges in addition to those included in the juvenile certification proceeding.

Ground 5: Trial counsel was ineffective for presenting a defense that involved Nathan as the shooter.

Ground 6: Counsel ineffectively advised Nathan to waive sentencing by jury.

Ground 7: Direct appeal counsel was ineffective for not challenging the validity of the waiver of jury sentencing on the non-homicide counts.

Ground 8: Trial counsel was ineffective for not moving to recuse the resentencing judge.

Ground 9: Nathan was denied due process because he was sentenced by a biased judge.

Ground 10: Nathan was denied due process and suffered cruel and unusual punishment when, on resentencing, he was sentenced to a term that is the equivalent of life without parole.

Ground 11: Nathan was denied due process and fair sentencing when the prosecutor did not disclose to trial counsel or timely disclose to resentencing counsel that a report indicated that Nathan's brother and cousin were aware that Nathan may have been sexually abused.

Ground 12: Trial counsel failed to plea bargain effectively and adequately convey the risk of going to trial.

Ground 13: Trial counsel ineffectively withdrew a motion to suppress physical evidence.

Ground 14: Trial counsel was ineffective by failing to call Nathan's mother, father, and hospital staff in support of a motion to suppress statements.

Ground 15: Trial counsel was ineffective for telling the jury during opening statements that it would find Nathan guilty on all counts.

6

Ground 16: Trial counsel ineffectively failed to move to change the judge without cause.

Ground 17:Trial counsel was ineffective for failing to argue that consecutive life sentences violated double jeopardy.

Ground 18: The imposition of consecutive life sentences violated double jeopardy.

Ground 19: Trial counsel ineffectively failed to object to the State's closing argument that was meant to inflame the prejudice of the jury and have them consider other crimes.

Ground 20: Nathan was denied due process at resentencing because the State's closing argument was aimed at inflaming the prejudice of jurors and encouraging them to consider other crimes.

## II.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it

confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-91 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). To be sure, if a claim could have been raised earlier but was not, that claim is procedurally defaulted. *See* 28 U.S.C. §2254(e)(2)[4]; *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Martinez v. Ryan*, 566 U.S. 1 (2012)

---

[4] If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
28 U.S.C. §2254(e)(2).

("To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim."). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

## III.    DISCUSSION

### A.  Ground 1: Juvenile Certification Process

Nathan argues that the juvenile certification process applied in this case violated his rights to due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and under *Apprendi*. (ECF No. 36 at 25; ECF No. 68 at 5); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). Nathan claims he presents a constitutional claim involving a state court's unreasonable application of clearly established federal law under *Apprendi* and unreasonable interpretation of the facts of how the juvenile process operates in Missouri. (ECF No. 68 at 11). Nathan maintains that, under R.S. Mo. § 211.071, the juvenile court considers ten factors when determining whether to transfer jurisdiction to the circuit court. Nathan notes that the seriousness of the crime is "the dominant criterion," *State v. Thomas*, 70 S.W. 3d 496, 504 (Mo. Ct. App 2002), for certification of a juvenile. (ECF No. 36 at 25) Thus, Nathan contends that "[u]nder this standard, without finding that there was any evidence to support the charge, a juvenile court can relinquish jurisdiction simply because a child is charged with a serious crime." (ECF No. at 36 at 25).  Nathan claims that due process requires more. In addition, Nathan argues that *Apprendi* mandates that facts which will increase a defendant's punishment must be found by a jury. (*See* ECF No. 36 at 27; ECF No. 68 at 5).

Nathan notes that the juvenile officer's petition alleged that he committed murder in the first degree. However, Nathan states that the state presented testimony and evidence that Nathan's co-defendant, Mario Coleman, was the actual shooter. Nathan claims that his certification improperly increased his "potential and actual punishment from juvenile sanctions until he was 21 years old (approximately five years after the offense) to confinement for the rest of his life without the possibility of parole." (ECF No. 36 at 29).

Nevertheless, the Missouri Supreme Court rejected Nathan's claim that Missouri procedures certifying a juvenile to be tried as an adult are unconstitutional. (ECF No. 37-17; Ex. 17 at 8-11) The Missouri Supreme Court held that certification proceedings do not have to "conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but … must measure up to the essentials of due process and fair treatment." (ECF No. 37-17 at 9 (citing *Kent v. United States*, 383 U.S. 541, 562 (1966) (citing *Pee v. United States*, 107 U.S.App.D.C. 47, 50, 274 F.2d 556, 559 (1959)). The Missouri Supreme Court affirmed that a juvenile defendant does not have a "constitutional right to have a jury decide whether he committed the acts alleged in the petition before the juvenile court can decide whether to relinquish its jurisdiction over him in the first instance." (ECF No. 37-17)

This Court holds that Ground 1 presents an issue as to Missouri's process for juvenile certification, which is an issue of Missouri state law. As such, a federal habeas court may not re-examine the Missouri Supreme Court's interpretation and application of state law. *Skillicorn v. Luebbers*, 475 F.3d 965, 974 (8th Cir. 2007) (citing *Schleeper v. Groose,* 36 F.3d 735, 737 (8th Cir.1994) ("A federal court may not re-examine a state court's interpretation and application of state law."). Here, Nathan attempts to create a new procedural rule that is not dictated by precedent, which is improper on collateral review. *See Edwards v. Vannoy*, 593 U.S. 255, 258

10

(2021) ("This Court has repeatedly stated that a decision announcing a new rule of criminal procedure ordinarily does not apply retroactively on federal collateral review."); s*ee also Kent*, 388 U.S. at 557–562 (certification for trial as an adult is constitutional if juvenile has right to counsel, access, to records, and a decision that permits meaningful appellate review).[5] Thus, because Ground 1 does not present an issue proper for federal habeas review and does not demonstrate an unreasonable application of federal law, it is denied.

### B. Ground 2: Prosecutor committed a *Brady* violation by not disclosing witness Nicholas Koenig had two municipal ordinance violations for stealing.

Nathan states that the government failed to disclose that prosecution witness Nicholas Koenig had two prior municipal stealing convictions from the City of Webster Groves. (ECF No. 36 at 30). Nathan claims this failure to disclose violates Mo. Sup. Ct. R. 25.03(A)(7), as well as the Fifth and Fourteenth Amendments to the United States Constitution and *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Nathan maintains that this evidence relates to witness Koenig's credibility and was not harmless because he was "the only witness who testified the shooter intentionally pointed the gun at someone." *Id*. Absent this intent and deliberation, Nathan claims "there is a reasonable probability of a different result." *Id*.

The Missouri Supreme Court held that the government did not violate Missouri Supreme Court Rule 25.03 by not disclosing Koenig's two municipal ordinance stealing convictions. (ECF No. 17 at 12-14)[6] The Missouri Supreme Court noted that, under Missouri law, a witness' municipal ordinance violations are not discoverable, cannot be used for impeachment, and the state had no duty to disclose them. *Id*. Specifically, the Missouri Supreme Court found that "the

---

[5] Notably, Nathan does not raise an issue as to juvenile certification requirements listed in *Kent v. United States*, 383 U.S. 541 (1966) and its progeny.
[6] Respondent mistakenly refers to Exhibit 56, another Missouri Supreme Court Opinion.

state had no obligation" to disclose the witness's municipal ordinance violations under Rule 25.03(A). *Id.*

This Court finds no basis for disturbing the State court decision under 28 U.S.C. §2254(d). To be sure, the Missouri Supreme Court explicitly found no violation of Mo. Sup. Ct. R. 25.03 and no resulting prejudice to Nathan. This Court agrees and finds no unreasonable application of prevailing federal law by the state court in Ground 2. *See also Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (where polygraph result were inadmissible under state law and, consequently, would not have resulted in a different outcome at trial, such evidence not was material and not required to be disclosed under *Brady*). Municipal ordinance violations are plainly excluded from the state's discovery obligations in Rule 25.03. Nothing about Rule 25.03(A) violates clearly established federal law. More to it, disclosing the municipal ordinance violation would not have made a difference in the context of the overall evidence and serious charges in this case.

### C. Ground 3: Nathan was denied due process and his right to confront and cross-examine witnesses when the trial court refused to disclose to defense counsel information regarding state's witness Koenig.

Prior to trial, Nathan's counsel learned witness Nicholas Koenig had a history of substance abuse. Nathan argues that the trial court rejected trial counsel's requests to use Koenig's history of substance abuse, limited questioning of Koenig, and limited the production of documents on this issue. At trial, Koenig testified that he had heroin issues in the past but had not been using illegal substances near the night of the crime or at the time of his testimony. (ECF No. 36 at 32). Nathan argues that this limited production and questioning violates the Fifth and Fourteenth Amendments to the United States Constitution, as well as *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *United States v. Bagley*, 473 U.S. 667 (1985). (ECF No. 36 at 31-32).

Nathan claims he was denied material evidence relevant to impeachment and is entitled to a new trial. (ECF No. 36 at 32).

Remarkably, in state court, Nathan asked for records related to Koenig's contacts with police, but he now asks for Koenig's medical records. (*See* ECF No. 37-14 at 61-67; ECF No. 37 at 28). Although these are different requests, Nathan claims that this Ground is not procedurally barred. Nathan argues that the state cannot deny him "access to evidence of which it has exclusive access and control and then simultaneously ask this Court to penalize him for not knowing the exact nature of the evidence to which the state itself is denying him and his counsel access." (ECF No. 68 at 12-13) Nathan maintains that "the information being referred to in both the state court claim and in this Court is based on the same set of facts, and it is not procedurally defaulted." *Id*. at 13. Nathan contends that "a habeas petitioner has not failed to develop evidence when he has been prevented from doing so by the state court process." *Id*. at 13 (citing *Williams v. Taylor*, 529 U.S. 420, 432-33 (2000)).

Nevertheless, the Court finds that this claim is procedurally barred. Nathan has shifted the claim raised in his first direct appeal before the Missouri Supreme Court. (ECF No. 37-14). As noted in the appeal, trial counsel requested and the prosecutor prepared a summary related to "a law enforcement contact that … Koenig had after the crime in this case." (ECF No. 37-14 at 61-64) The trial court reviewed this information *in camera* and determined that the subject matter was inadmissible to impeach Koenig. *Id*.

The Court finds that Nathan raises a different and separate issue now. Whereas Nathan raised Koenig's "law enforcement contact" (ECF No. 37-14 at 61) in state court, he requests "medical records" (ECF No. 36 at 31) here. The Court holds that these two issues do not relate to the "same set of facts" (ECF No. 68 at 13) and that the claim here is procedurally barred because

Nathan did not raise this issue in state court. "[A] federal habeas petitioner's claims must rely on the same factual and legal bases relied on in state court." *Winfield v. Roper,* 460 F.3d 1026, 1034 (8th Cir.2006); *Osborne v. Purkett,* 411 F.3d 911, 919 (8th Cir.2005); *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006). The Court disagrees with Nathan's argument that the evidence was in the exclusive access of the state, given that the trial counsel requested the particular law enforcement contact information and the state provided that information to the state court. Therefore, the Court denies relief as to Ground 3 because it is procedurally barred.

In the alternative, the Court also holds this claim fails on the merits. The trial court did not commit a due process violation by refusing to admit medical (or interactions with law enforcement) evidence about a witness when that evidence was not admissible as either exculpatory or impeachment evidence. *See Marshall v. Lonberger,* 459 U.S. 422, 438, n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules"); *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (same). Thus, the Court finds that the Missouri Supreme Court did not unreasonably apply federal law and there is no basis for federal habeas relief in Ground 3.

### D. Ground 4: The trial court violated due process by convicting Nathan of charges in addition to those included in the juvenile certification proceeding.

The juvenile certification petition did not list Rose Whitrock as a victim of the crimes of which Nathan was accused.  The charge with the Circuit Court, however, listed four counts related to crimes against Whitrock: robbery, kidnapping, and two counts of armed criminal action. Nathan filed a pretrial motion to dismiss these counts because he did not have notice of them at the time of his juvenile certification. Nathan's motion to dismiss was taken under advisement and was later granted after verdict. The circuit court did not impose sentences for these counts. On cross-appeal, the Missouri Supreme Court reversed the dismissal of these four

14

counts and Nathan was sentenced to a consecutive term of imprisonment for these counts. (ECF No. 36 at 33).

Nathan argues that, under *Kent v. United States*, 383 U.S. 541 (1966), he was entitled to have notice of these charges in juvenile court so that he could argue that their transfer was improper. (ECF No. 36 at 33). Nathan further claims this was not harmless error since he was sentenced to additional consecutive time on these charges. (ECF No. 36 at 34).

Nevertheless, the issue raised in Ground 4 does not raise a federal constitutional issue. As previously discussed, the requirements for certification of a juvenile as an adult are a state law issue, without federal implication. *See Schleeper v. Groose,* 36 F.3d 735, 737 (8th Cir.1994) ("A federal court may not re-examine a state court's interpretation and application of state law."); *Skillicorn v. Luebbers*, 475 F.3d 965, 974 (8th Cir. 2007). To the extent that Nathan is raising a federal issue, the Missouri Court of Appeals' decision is entitled to deference under 28 U.S.C. §2254(d). Moreover, Nathan is attempting to create a new procedural rule, which is inapplicable to his criminal case. *See Edwards v. Vannoy*, 593 U.S. 255, 258 (2021) ("This Court has repeatedly stated that a decision announcing a new rule of criminal procedure ordinarily does not apply retroactively on federal collateral review."); *Kent*, 383 U.S. at 559 (process for a juvenile's certification for trial as an adult is constitutional if the juvenile has the right to counsel, access to records, and a decision that permits meaningful appellate review); *see also Juv. Male v. Commonwealth of N. Mariana Islands*, 255 F.3d 1069, 1072 (9th Cir. 2001) ("The four basic safeguards are: 1. a hearing; 2. representation by counsel; 3. attorney access to social records on request; and 4. a statement of reasons in support of the waiver or transfer order."); *In re Gault*, 387 U.S. 1, 12 (1967). Therefore, the Court finds that Nathan has not demonstrated an

unreasonable application of federal law and, as such, Ground 4 fails to state a claim for federal habeas relief.

### E.  Ground 5: Trial counsel was ineffective for presenting a defense that petitioner was the shooter.

In her opening statement, trial counsel asserted that Nathan shot and killed Stallis, when the gun he was holding accidentally went off during a struggle. The state presented evidence that co-defendant Coleman was the only person who fired a gun in the house. Nathan did not testify at his trial. During closing argument, trial counsel argued that the witnesses had confused Nathan and Coleman, Nathan was the shooter, and that Nathan had only acted "recklessly."

In his first post-conviction motion, Nathan argued that his trial counsel's theory that he was the shooter constituted ineffective assistance of counsel. However, the Missouri Court of Appeals disagreed and upheld the circuit court's denial of post-conviction relief, holding that defense counsel's strategy was reasonable based largely upon Nathan's privileged statement to counsel that he was the shooter. (ECF No. 36 at 36; *see also* ECF No. 37-27 ("Trial Counsel further testified that Movant had hold him that he was the shooter, which was consistent with the presence of Movant's DNA on the murder weapon.")). Nathan argues, however, that presenting this strategy to the jury, without Nathan's consent and without knowing whether he would exercise his right to testify, was unreasonable. *Id*.

The Court holds that the Missouri Court of Appeals reasonably applied *Strickland* and found that trial counsel was not ineffective for making the reasonable trial strategy decision to admit in opening and closing remarks that Nathan was the shooter. (ECF No. 37-27 at 5-9). The evidence—Nathan's confession, DNA on the gun, and witness testimony—all corroborated that Nathan was the shooter. Thus, the Court agrees that trial counsel made the reasonable trial decision to admit Nathan's role as the shooter and then focus on presenting him as the less

16

culpable of the defendants. *See Shockley v. Crews*, 696 F. Supp. 3d 589, 642 (E.D. Mo. 2023) ("Ineffective assistance of counsel will not lie where the conduct involves the attorney's use of reasonable discretion in a matter of trial strategy, and it is the exceptional case where a court will hold a strategic choice unsound."). As such, the Missouri Court of Appeals' decision was not an unreasonable application of federal law and cannot be the basis of habeas relief. Therefore, Ground 5 fails.

### F.  Ground 6: Counsel ineffectively advised Nathan to waive sentencing by jury.

After Nathan was convicted of first-degree murder, trial counsel advised Nathan to waive jury sentencing and did not present any mitigating evidence to the trial judge. At the time of Nathan's conviction, the only available punishment for first-degree murder was life without parole. Nathan's counsel testified at the post-conviction hearing that, if a sentence other than life without parole would have been available, then Nathan would have gone forward with jury sentencing and not waived that right. (ECF No. 36 at 37-38).

In the first post-conviction proceeding, Nathan argued that his waiver of jury sentencing was involuntary because of his counsel's ignorance regarding a fundamental legal issue. That is, at the time of Nathan's sentencing, cases were pending in the United States Supreme Court arguing that the rule in *Graham v. Florida*, 560 U.S. 41 (2010), which held that sentences of life without parole could not be imposed on persons who committed non-homicide offenses before they reached age 18, should be expanded to include homicide offenses. (ECF No. 36 at 38). The Missouri Court of Appeals held that trial counsel properly advised Nathan of the law at the time of sentencing and was not required to predict or anticipate a change in law. (ECF No. 37-27 at 10)  Nathan received jury sentencing on remand, but he notes that the proceeding involved only 5 of the 26 counts of which  he was convicted. (ECF No. 36 at 39). Nathan points out that the

waiver of jury sentencing was upheld as to the other 21 counts, and the sentences on those counts included "multiple consecutive sentences of life." *Id*. Thus, he argues that this error was not harmless. *Id*.

The Court holds that the Missouri Court of Appeals reasonably applied *Strickland v. Washington* in finding that trial counsel was not ineffective for advising Nathan to waive jury sentencing. Trial counsel properly advised Nathan regarding the possible range of punishment at the time of his sentencing and counsel was not deficient for failing to anticipate a change in the law. *See Horne v. Trickey*, 895 F.2d 497, 500 (8th Cir. 1990) ("In effect, Horne argues that his counsel should have realized that the Supreme Court was planning a significant change in the existing law, and that the failure to anticipate this change rises to the level of constitutional ineffectiveness. We repeatedly have been unwilling to hold attorneys to such a high standard."). Therefore, the Court finds no unreasonable application of federal law and denies habeas relief on Ground 6.

### G. Ground 7: Direct appeal counsel was ineffective for not challenging the validity of the waiver of jury sentencing on the non-homicide counts.

On direct appeal, Nathan's counsel argued that his waiver of jury sentencing was involuntary. Nathan's direct appeal counsel focused on the homicide counts and failed to argue that the waiver was also involuntary as to the non-homicide counts. (ECF No. 36 at 39). Nathan claims that "[h]ad counsel included a separate point regarding the non-homicide counts, there is a reasonable probability that Mr. Nathan would have been granted jury resentencing on all counts." (ECF No. 36 at 40). Nathan argues that the Missouri Court of Appeals made an unreasonable determination when it found that Nathan's waiver was knowing and voluntary.

Initially, the Court holds that the Missouri Court of Appeals reasonably held that Nathan's waiver of his right to jury sentencing was knowing and voluntary based upon the record. The Missouri Court of Appeals quoted the colloquy of the trial court:

THE COURT: . . . Mr. Nathan, your attorney has advised me that you wish to waive the right to having a penalty hearing before the jury, is that correct?

MOVANT: Yes, sir.

THE COURT: Has anybody threatened you, intimidated you, mistreated you or any member of your family or in any way forced you to give up your right to a penalty phase hearing?

MOVANT: No, sir.

THE COURT: Do you understand you would have the right to have the jury assess punishment on all but Count I—well, they'd assess punishment on Count I but the jury does have a range of discretion in all the other counts, do you understand that?

MOVANT: Yes, sir.

Here, Movant expressly waived his right to jury sentencing and affirmed that his waiver was voluntary:

THE COURT: . . . Mr. Nathan, your attorney has advised me that you wish to waive the right to having a penalty hearing before the jury, is that correct?

MOVANT: Yes, sir.

THE COURT: Has anybody threatened you, intimidated you, mistreated you or any member of your family or in any way forced you to give up your right to a penalty phase hearing?

19

MOVANT: No, sir.

THE COURT: Do you understand you would have the right to have the jury assess punishment on all but Count I—well, they'd assess punishment on Count I but the jury does have a range of discretion in all the other counts, do you understand that?

MOVANT: Yes, sir.

(ECF No. 37-27). Thus, based upon the unequivocal and explicit language in the record, the Court holds that the Missouri Court of Appeals made a reasonable determination that Nathan waived his Sixth Amendment right to jury sentencing.

Further, the Missouri Court of Appeals found that "the record indicates that Appellate Counsel's decision not to include a separate point on appeal arguing that Movant's waiver of jury sentencing was involuntary as to all counts—including homicide counts—was reasonable appellate strategy." (ECF No. 37-27 at 11; *see also* ECF No. 37-27 at 13-14 ("Appellate Counsel cannot be deemed ineffective for failing to assert a claim not previously raised on appeal, especially after attempting to strategically address the issue by incorporating the claim into a previously preserved point on appeal."). This Court agrees that direct appeal counsel is not ineffective for failing to raise a claim when counsel raised stronger claims instead. *See Davila v. Davis*, 582 U.S. 521, 533 (2017) (citing *Smith v. Robbins,* 528 U.S. 259, 288 (2000) ("Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court."). Here, direct appeal counsel focused on arguing that Nathan's mandatory sentence of life without parole on his homicide count was unconstitutional under *Graham v. Florida*, 560 U.S. 48 (2010) and *Roper v. Simmons*, 543 U.S. 551 (2005) (*see* ECF No. 37-27 at 11-14), which were clearly stronger than raising the

unpreserved claim that the waiver of jury sentencing on the non-homicide counts was involuntary. As such, the Court denies the issues raised in Ground 7 because the Missouri Court of Appeals reasonably applied *Strickland v. Washington*. *See* 28 U.S.C. §2254(d).

### H. Ground 8: Resentencing counsel was ineffective for not moving to recuse the resentencing judge.

At the original trial proceeding, the judge made several comments concerning Nathan's sentence, including the following:

> Many years ago, I sentenced an individual to death on two counts and the prosecution asked that I run those consecutively, even though that seemed rather silly, but the purpose then and now was to send a message to future Judges and Governors as to what this Court believes is the appropriate future for you, Mr. Nathan. This Court believes that that future should be that you be permanently incapacitated from repeating this kind of behavior.

The judge's "Memorandum and Order" likewise included many statements regarding the propriety of allowing sentences of life without parole for juvenile offenders. (ECF No. 36 at 41). Nathan argued in his second post-conviction motion that resentencing counsel was deficient when he failed to object and ask for the trial court to recuse himself for resentencing proceedings on Counts 1, 2, 9, 10, 23, and 24 due to personal bias or impartiality since the record demonstrated his intent to sentence Nathan to the functional equivalent of life without parole. (ECF No. 36 at 41).

The Missouri Court of Appeals denied Nathan's request for relief because Nathan did not "overcome the presumption that trial counsel's decision not to move to disqualify the sentencing judge was a matter of reasonable trial strategy." (ECF No. 37-39 at 6). Trial counsel testified that counsel did not move to disqualify the sentencing judge because, based on his past experience with the sentencing judge, he believed the judge would be fair. (ECF No. 37-39 at 6). Also, the Court of Appeals found that counsel's primary goal was not related to the judge but rather was to

prevent Nathan from being convicted of first degree murder and receiving a life without parole sentence. (ECF No. 37-39 at 7) Finally, the Court of Appeals found that the complained-of statements by the sentencing judge related to "evidence detailing the horrific crimes committed by [Nathan], and there was no basis for trial counsel to file a motion to disqualify the sentencing judge." (ECF No. 37-39 at 7) The Court holds that the Missouri Court of Appeals appropriately applied *Strickland v. Washington* and denies relief as to Ground 8. *See* 28 U.S.C. §2254(d).

### I. Ground 9: Nathan was denied due process because he was sentenced by a biased judge.

Nathan argues that the trial judge's in-court statements and memorandum from his original sentencing demonstrated that Nathan was not afforded a "meaningful opportunity to present a complete defense because of a judge biased against the law applicable to his sentencing." (ECF No. 36 at 45). In the post-conviction review, the Court of Appeals declined to review this issue because it was not raised on direct appeal and were procedurally defaulted. *See* ECF No. 37-39 at 9 ("While appellate courts may hear alleged constitutional violations in exceptional circumstances, [Nathan] failed to identify any reason for his failure to assert his claim on direct appeal and why his claim should be reviewed in this appeal."). Nathan claims that the Court of Appeals' failure to address this issue violates his due process rights.

The Court holds Ground 9 is procedurally barred. Firstly, Nathan may not allege "cause" excusing the default of a claim of trial court error based on ineffective assistance of appellate counsel, which are themselves procedurally defaulted. *Fields v. Roper*, 448 F. Supp. 2d 1113, 1117 (E.D. Mo. 2006) (citing *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000)). Further, the Court notes that direct appeal counsel is not ineffective for not raising a claim when that claim was plainly less strong than the claims that were raised. *See Davila*, 582 U.S. at 533. As previously discussed, the Court of Appeals found that the sentencing judge's statements at the

original sentencing related to the horrific nature of the crime and were not a basis for disqualification. Thus, any attempt at raising this issue would not have been as effective as other issues raised. As a result, the Court finds no unreasonable application of federal law by the Missouri Court of Appeals and Ground 9 fails.

### J. Ground 10: Nathan was denied due process and suffered cruel and unusual punishment when, on resentencing, he was sentenced to a term that is the equivalent of life without parole.

Nathan states that the Department of Corrections advised him that his first parole hearing will occur in 2076 when he is 83 years old. (ECF No. 36 at 46).[7] Nathan asserts that he has essentially been sentenced to the "functional equivalent of life without parole and therefore violates *Miller v. Alabama* [567 U.S. 460 (2012)] ." (ECF No. 36 at 46-47); *see also* ECF No 37-39 at 10 ("Movant asserts that the motion court clearly erred in denying his claim that the aggregate of three hundred years is the functional equivalent of life without parole because there is no meaningful opportunity for release during Movant's lifetime."). The Missouri Supreme Court held that *Miller v. Alabama* was limited to where a defendant was subject to a mandatory life sentence without parole. *See State v. Nathan*, 522 S.W.3d 881, 891 (Mo. 2017) ("*Miller* only applies to cases in which a sentencing scheme 'mandates life in prison without possibility of parole for juvenile offenders.' 132 S.Ct. at 2469."). Nathan argues that this narrow reading of *Miller v. Alabama* presents an unreasonable application of clearly established federal law. (ECF No. 36 at 47). Nathan acknowledges Mo. Rev. Stat. § 217.690.6 permits him a parole hearing when he has served 15 years, or in 2024, but claims that this statute may be repealed and does not dispose of the constitutional issue. *Id*. Indeed, on July 9, 2024, Missouri Governor signed into law SB 754 (now Mo. Rev. Stat. § 217.690.7), which, among other things, eliminates a

---

[7] Nathan notes that "[t]he basis for this calculation is unclear." (ECF No. 36 at 46, n.7).

provision providing for automatic parole eligibility for youth offenders convicted of certain homicide offenses.[8]

In response, Respondents argue that the new version of Section 217.690 does not affect the constitutionality of the Nathan's sentence and the parole structure that was approved by the Missouri Supreme Court in *State v. Nathan*, 522 S.W.3d 881, 885-86 (Mo. 2017) (United States Supreme Court precedent "does not clearly establish that consecutive, fixed term sentences for juveniles who have committed multiple nonhomicide offenses are unconstitutional when they amount to the practical equivalent of life without parole.").

The Court finds that the Missouri Supreme Court's interpretation of federal precedent was not unreasonable and finds no basis for relief under 28 U.S.C. §2254. To be sure, the Court holds that there is no basis for federal habeas relief, given that there is no clearly established Supreme Court precedent in this area.[9] Rather, Nathan—at best—is asking this Court to improperly extend

---

[8] *See* Mo. Rev. Stat. §565.021.1(1) (2024) ("A person commits the offense of murder in the second degree if he or she: (1) Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person."); *cf.* Mo. Rev. Stat. § 217.690.6 ("Any offender sentenced to a term of imprisonment amounting to fifteen years or more or multiple terms of imprisonment that, taken together, amount to fifteen or more years who was under eighteen years of age at the time of the commission of the offense or offenses may be eligible for parole after serving fifteen years of incarceration, regardless of whether the case is final for the purposes of appeal, and may be eligible for reconsideration hearings in accordance with regulations promulgated by the parole board."); Mo. Rev. Stat. § 217.690.7 (2024) ("The provisions of subsection 6 of this section shall not apply to an offender found guilty of capital murder, murder in the first degree or murder in the second degree, when murder in the second degree is committed pursuant to subdivision (1) of subsection 1 of section 565.021, who was under eighteen years of age when the offender committed the offense or offenses who may be found ineligible for parole or whose parole eligibility may be controlled by section 558.047 or 565.033."); Mo. Rev. Stat. § 217.690.7 (2021) ("The provisions of subsection 6 of this section shall not apply to an offender found guilty of murder in the first degree or capital murder who was under eighteen years of age when the offender committed the offense or offenses who may be found ineligible for parole or whose parole eligibility may be controlled by section 558.047 or 565.033.")

[9] Indeed, the Eighth Circuit has decided that a similar sentence for a juvenile was constitutional:

the established precedent. *See White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error."). Therefore, the Court holds that the Supreme Court of Missouri reasonably interpreted United States Supreme Court precedent, and that interpretation cannot be disturbed under § 2254(d).

---

We cannot find the Minnesota Supreme Court's decision unreasonable. As the Minnesota Supreme Court pointed out, Ali's case is distinguishable from *Miller* and *Montgomery*. Unlike the *Miller* and *Montgomery* defendants, Ali received three life sentences for three separate murders, each permitting possible release after thirty years. *See* [*Montgomery v. Louisiana*, 577 U.S. 190, 195, 136 S. Ct. 718, 726, 193 L. Ed. 2d 599 (2016), *as revised* (Jan. 27, 2016)]; *Miller*, 567 U.S. at 469, 132 S.Ct. 2455. He does not face a life-without-parole sentence. And the United States Supreme Court has not "clearly established" that the rule in *Miller* and *Montgomery* applies to consecutive sentences functionally equivalent to life-without-parole. 28 U.S.C. § 2254(d)(1); *see also Miller*, 567 U.S. at 479, 132 S.Ct. 2455 (forbidding "*a sentencing scheme* that *mandates* life in prison without possibility of parole for juvenile offenders") (emphasis added).

Ali sees this as a distinction without a difference. In either case, he argues, he will be in prison for the rest of his life. He contends that the principles articulated in *Miller* and *Montgomery* apply to all cases in which a juvenile — whether convicted of one crime or many — is sentenced to spend the rest of his life in prison. We disagree. In *Miller* and *Montgomery*, the United States Supreme Court relied entirely on the principle of proportionality when finding mandatory life-without-parole sentences for juveniles unconstitutional. Under the Eighth Amendment, the Court held, "'punishment for crime should be graduated and proportioned' to both the offender and the offense." *Miller*, 567 U.S. at 469, 132 S.Ct. 2455 (quoting *Roper v. Simmons*, 543 U.S. 551, 560, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005)); *see also Montgomery*, 136 S. Ct. at 726 (explaining that "a lifetime in prison is a disproportionate sentence for all but the rarest of children"). Because Ali never received a life-without-parole sentence, a court could reasonably conclude that *Miller* and *Montgomery* do not apply.

*Ali v. Roy*, 950 F.3d 572, 574–75 (8th Cir. 2020).

K. **Ground 11: Nathan was denied due process and fair sentencing when the prosecutor did not disclose to trial counsel or timely disclose to resentencing counsel that a report indicated that Nathan's brother and cousin were aware of sexual abuse of Nathan**.

Nathan argues that the state failed to disclose to original trial counsel a police report that documented sexual abuse of Nathan, including that his brother and cousin were aware of the abuse, in violation of the state's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). Nathan claims that jury sentencing would not have been waived if trial counsel had been provided that information. (ECF No. 36 at 48).

On appeal, the Missouri Supreme Court affirmed the finding that there was no *Brady* violation. *See* ECF No. 37-58 at 6; *see also State v. Nathan*, 522 S.W.3d 881, 885 (Mo. 2017). The Court found that *Brady* was inapplicable because Nathan had disclosed the alleged sexual abuse to a caseworker pursuant to a "hotline" investigation before trial and that communication was included in a police report and other Missouri Department of Social Services-Children's Division records, both of which were provided to Nathan prior to trial. *Id*. Thus, the Court concluded that the state had not committed a *Brady* violation since Nathan was aware of the evidence at trial. *Id*.

The Court holds that the Supreme Court of Missouri reasonably applied *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. *See State v. Holden*, 278 S.W.3d 674, 679–80 (Mo. 2009) ("*Brady,* however, only applies in situations where the defense discovers information after trial that had been known to the prosecution at trial. If the defendant had knowledge of the evidence at the time of trial, the state cannot be faulted for non-disclosure."); 28 U.S.C. §2254(d). Thus, the Court does not grant relief on Ground 11.

L. **Ground 12: Trial counsel failed to plea bargain effectively and adequately convey the risk of going to trial.**

26

Nathan claims that his trial counsel did not have realistic conversations with him about the lengthy penalties he faced, if convicted of first-degree murder. (ECF No. 36 at 49-50). Nathan claims that his counsel was ineffective for failing to advise him of the risk of trial and the likelihood of an unfavorable disposition. *See* ECF No. 36 at 50 (citing *Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 134 (2012)). Nathan emphasizes that this duty was heightened because he was a minor and suffered from diminished capacity due to his low IQ. *Id*. Nathan acknowledges that this claim was not presented in state court, but argues that the facts underlying the claim are in the state court record and are sufficient to establish both ineffective assistance of trial counsel and prejudice. (ECF No. 36 at 52).

Initially, as admitted by Nathan, this claim is defaulted by his failure to present it in state court. Therefore, the Court holds that this claim cannot be reviewed here because he has failed to meet the stringent requirements of 28 U.S.C. §2254(e)(2). *See Shinn*, 596 U.S. at 371 (citing *Coleman*, 501 U.S. at 750; *Martinez*, 566 U.S. 1 ("To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim."). As Nathan has shown neither cause nor actual prejudice, the Court finds that Ground 12 is procedurally defaulted.

Even if Ground 12 were not procedurally defaulted, the Court holds that this claim fails on the merits. Although he claims that the state seemed willing to entertain a plea offer, Nathan fails to allege that the state offered a sentence of life with the possibility of parole plus a term of years as a sentence. Rather, the evidence before this Court is that the state would not negotiate a plea. *See* ECF No. 37-20 at 33. Similarly, Nathan cannot identify anything in the record demonstrating he would have accepted such an offer. Thus, Nathan's claim in Ground 12 is

supported only by speculation, fails to show an unreasonable application of federal law, and fails accordingly.

M. **Ground 13: Trial counsel ineffectively withdrew a motion to suppress physical evidence**.

Nathan claims that trial counsel should have pursued a motion to suppress as to law enforcement's search of his car. Here, law enforcement searched Nathan's vehicle while he was "incapacitated in the hospital" and found a .25 caliber pistol, which prosecutors asserted was the murder weapon. (ECF No. 36 at 52). Law enforcement did not have a warrant to search Nathan's car, but claimed at trial that they searched the vehicle as part of "processing the vehicle as a 'crime scene'". (ECF No. 36 at 53). Nathan asserts that his counsel should have pursued a motion to suppress because there is no "crime scene" exception to the Fourth Amendment's warrant requirement and because there was no crime scene. (ECF No. 36 at 53-54). Nathan admits that this claim was not presented in state court but argues that the facts underlying the claim are in the state court record and are sufficient to establish both ineffective assistance of trial counsel and prejudice (ECF No. 36 at 55).

Again, the Court notes that Nathan did not raise this issue in state court. However, he claims that his default is excused by ineffective assistance of post-conviction counsel. (ECF No. 36 at 52). The Court finds that Nathan has not shown cause or actual prejudice and, thus, Ground 13 is procedurally defaulted. *See* 28 U.S.C. §2254(c); *Shinn*, 596 U.S. at 371; *Coleman*, 501 U.S. at 750; *Martinez*, 566 U.S. 1.

Further, the Court holds, on the merits, that Nathan has not shown that trial counsel was ineffective for failing to pursue a motion to suppress as to his vehicle. The testimony before the trial court indicated that Nathan told the police that his vehicle was at the crime scene where he was shot. *See* ECF No. 37-2 at 322-34. Thus, the police officer's search of the vehicle for

28

evidence fits within the probable cause exception to the search warrant requirement. *See United States v. Shackleford*, 830 F.3d 751, 753 (8th Cir. 2016) ("Probable cause to believe that an automobile contains contraband or evidence of criminal activity has long been held to justify a warrantless search of the automobile and seizure of the contraband."); *United States v. Ross*, 456 U.S. 798, 806–09 (1982); *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009); *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007) (internal citation omitted)("Probable cause exists where there is a fair probability that contraband or evidence of a crime will be found in a particular place."). As such, the Court holds that counsel was not ineffective for failing to raise a meritless motion to suppress. Therefore, Ground 13 fails to present a claim for federal habeas relief.

### N. Ground 14: Trial counsel was ineffective because counsel did not call Nathan's mother, father, and hospital staff in support of a motion to suppress statements.

Nathan's trial counsel argued that his in-hospital statements should have been suppressed because he was not read his *Miranda* rights or told that he was a suspect before being questioned by police. (ECF No. 36 at 56). The trial court found that the police did not tell Nathan that he was not free to leave and there was no physical seizure that would trigger Nathan's *Miranda* rights. *Id*.

Nathan argues that his trial counsel was deficient for not calling his parents or hospital staff to testify that he was handcuffed to a hospital bed and an officer was stationed outside his room. He also alleges that his mother would have testified that she was not in the room with him at the time he was questioned, in contradiction to Lt. Ramey's testimony. (ECF No. 36 at 57). Nathan claims that the failure to bring this evidence "was prejudicial both because the story he told was crucial evidence of his consciousness of guilt and was also the basis for the justification for

searching Mr. Nathan's car, which lead directly to the discovery of the murder weapon in this case." (ECF No. 36 at 57-58).

However, the Court notes that Ground 14 is defaulted because it was not raised in state court. Although Nathan argues that his default is excused by ineffective assistance of post-conviction counsel, the Court holds that the record does not reflect any excuse for the default. Here, Nathan argues that his parents and unnamed hospital staff would have testified that he was handcuffed to his hospital bed. Nathan cannot expand the record to support his assertion of cause to excuse his default and to support his underlying ineffective assistance of counsel claim. The Supreme Court has held "that, under [28 U.S.C.] § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." *Shinn*, 596 U.S. at 382; *Marcyniuk v. Payne*, 39 F.4th 988, 999 (8th Cir. 2022). Thus, the Court holds that Ground 14 is meritless and procedurally barred.

### O. Ground 15: Trial counsel was ineffective for telling the jury during opening statements that the jury would find Nathan guilty on all counts.

During Nathan's trial counsel's opening argument, she stated, "you're going to return verdicts of guilty." (ECF No. 36 at 59). She further stated that the prosecution's theory of the case, that Nathan was present, but was not the shooter, was incorrect, and that her client had shot and killed Gina Stallis and was the person who shot Isabella Lovadina and Nick Koenig. *Id*. Nathan claims that he told his attorneys that he did not agree with this trial strategy, but that his counsel proceeded anyway because they believed he would go along with whatever they said. *Id*. Nathan acknowledges that this claim was not presented in state court, but asserts that the "facts underlying the claim are in the state court record and are sufficient to establish both ineffective assistance of trial counsel and prejudice." (ECF No. 36 at 61).

As an initial matter, Ground 15 is procedurally barred because he did not raise this issue in state court and he has not shown cause and prejudice. *See* 28 U.S.C. § 2254(d). Also, even if Ground 15 was not procedurally barred, this Court finds that it would still be denied on its merits. In its Findings of Facts and Conclusions of Law, the post-conviction review court noted the overwhelming evidence in support of Nathan's guilt, which supported the defense strategy for requesting a finding of guilty to a lesser offense. (ECF No. 37-21 at 141). The post-conviction review court noted that defense counsel and Nathan discussed the evidence and the case and ultimately decided "that pursuing the defense strategy that Nathan was the shooter was the best option." *Id*. Consequently, the post-conviction review court discerned that trial counsel's opening statement that Nathan would testify that he was the shooter at trial was not deficient. (ECF No. 37-21 at 142). The post-conviction review court determined that Nathan "acquiesced in the defense strategy" to admit that he was the shooter and he "never expressed to counsel … any change of heart concerning the defense strategy." (ECF No. 37-21 at 137) Thereafter, the Missouri Court of Appeals found that defense counsel had pursued a reasonable trial strategy and that their performance was not deficient. *See* ECF No. 37-27 at 5-9 (holding that trial counsel was not ineffective in arguing that Nathan was the shooter in an attempt to show he was the less culpable defendant).

The Court agrees that the Missouri Court of Appeals reasonably applied *Strickland v. Washington* in finding that trial counsel was not deficient. Trial counsel's statements to the jury were made as part of a decided and approved trial strategy to make Nathan seem less blameworthy, given the extensive evidence of his participation in the crimes. Thus, the Court finds that Nathan has not shown an unreasonable application of federal law and Ground 15 fails on the merits.

### P. Ground 16: Trial counsel ineffectively failed to move to change the judge without cause.

Nathan asserts that his trial counsel was ineffective for failing to request a new trial judge when the trial judge had a reputation as a harsh judge for sentencing. (ECF No. 36 at 61-64). Nathan acknowledges that this claim was not presented in state court but asserts that the "facts underlying the claim are in the state court record and are sufficient to establish both ineffective assistance of trial counsel and prejudice." (ECF No. 36 at 64).

Ground 16 is procedurally barred because he did not raise this issue in state court and he has not shown cause and prejudice. *See* 28 U.S.C. § 2254(d). Moreover, the Court finds that the Missouri Court of Appeals reasonably applied federal law  and agrees with the Court of Appeals that Nathan has shown no basis for relief under *Strickland v. Washington*. See ECF No. 37-37 at 6-8. Nathan has not demonstrated that the sentencing judge was in any way prejudiced or unable to impartially sentence Nathan. *See Anderson v. State*, 402 S.W.3d 86, 92 (Mo. 2013) (citing *Worthington v. State,* 166 S.W.3d 566, 579 (Mo. banc 2005) ("It is presumed that a judge acts with honesty and integrity and will not preside over a hearing in which the judge cannot be impartial."). Indeed, the Court agrees with the Missouri Court of Appeals that none of the sentencing judge's prior statements indicated any undue animus towards Nathan, and that Nathan has not shown that the decision to keep the sentencing judge on the case was unreasonable trial strategy. *See Prince v. State*, 390 S.W.3d 225, 237 (Mo. Ct. App. 2013) (citing *State v. Ayers,* 911 S.W.2d 648, 652 (Mo. Ct. App. 1995) ("Whether to file a motion to disqualify a judge is a matter of trial strategy."); *State v. Hamilton*, 892 S.W.2d 774, 784 (Mo. Ct. App. 1995) ("A court will not find ineffective assistance where the conduct complained of by the accused involves counsel's use of reasonable discretion in a matter of trial strategy."). Thus, the Court finds that

the Missouri Court of Appeals did not unreasonably apply federal law under *Strickland* and denies relief on Ground 16.

### Q. Ground 17 and 18: Trial counsel was ineffective for failing to argue that consecutive life sentences violated double jeopardy and the Court's imposition of consecutive life sentences violated double jeopardy.

In Ground 17, Nathan concedes that trial counsel objected that the consecutive sentences were the functional equivalent of life without parole and violated *Miller v. Alabama*, but argues that trial counsel was nonetheless ineffective because counsel did not object that consecutive sentences also violated Nathan's right against double jeopardy. Likewise, in Ground 18, Nathan argues that the trial court erred in its sentencing because it violated double jeopardy. Nathan contends that, during resentencing, the jury made a determination that the state had not met its burden to prove that life without parole was the appropriate sentence:

> When it made that determination, it had before it the evidence of all of the crimes committed by Mr. Nathan on that night. Under the Double Jeopardy Clause, life without parole was thus no longer an option. In sentencing Mr. Nathan to the functional equivalent of life without parole by sentencing him to multiple consecutive sentences, the court overrode the determination of the jury that such a sentence was not appropriate for this child in this case[.]

(ECF No. 36 at 66). Nathan acknowledges that these claims were not presented in state court but asserts that the "facts underlying the claim are in the state court record and are sufficient to establish both ineffective assistance of trial counsel and prejudice." (ECF No. 36 at 67).

The Court notes that these claims are procedurally defaulted as they were not adjudicated in state court. *See* 28 U.S.C. § 2254(c). Further, Nathan's novel arguments as to what constitutes double jeopardy under these facts, without any supporting case law, cannot be considered either ineffective assistance of counsel or trial error. *See Glass v. State*, 227 S.W.3d 463, 472 (Mo. 2007) ("Counsel will generally not be held ineffective for failing to anticipate a change in the law."); *Zink v. State*, 278 S.W.3d 170, 190 (Mo. 2009) ("At the time of [defendant's] trial, his

counsel's performance was consistent with existing law, and he was not required to predict" a change in the law). To be sure, double jeopardy does not apply and never attached during these circumstances. Nathan simply was never sentenced to life without parole. The Court agrees that these claims are meritless and that there was no unreasonable application of federal law by the trial court. The Court denies relief on Grounds 17 and 18.

> **R. Ground 19 and Ground 20: Trial counsel ineffectively did not object to closing argument that was meant to inflame the prejudice of the jury and have them consider other crimes and Nathan was denied due process at resentencing because the prosecutor's closing argument was aimed at inflaming the prejudice of jurors and encouraging them to consider other crimes.**

During closing arguments to the jury during his second sentencing, the prosecutor invoked the images of victim Gina Stallis and her family, and asked the jury to send a message that they had been heard.  The prosecutor also spoke more broadly about crime in St. Louis, Missouri: "Now, ladies and gentlemen, all of you are in a very unique position. You are here to determine this sentence and you're here for a reason. You have the voice and opportunity to say enough. The gun violence in our city enough. It's high. There's crime out there. This is your chance to take a stand. This is your chance to stand with the family, to stand with these victims of violence." (ECF No. 36 at 68-69). Then, after the jury had already rejected the sentence of life without parole and after asking the jury for the maximum sentences on each count, the prosecutor repeatedly used the names of the victims in this case and asked the jury to send a message to them and to the city: "That's what he deserves for what he did. Let them know that you heard them. Let the city know that you heard them." *Id*. Trial counsel did not object to these statements. In Ground 19, Nathan argues that "[f]ailure to make proper objections is ineffective assistance of counsel. In light of the mitigating evidence in this case, a reasonable jury would not have sentenced Mr. Nathan to multiple life sentences but for the passion-inciting comments and

the directive to jurors to act on behalf of the City of St. Louis to battle crime generally." (ECF No. 36 at 71). In Ground 20, Nathan makes a similar argument but blames the trial court for the error. Nathan acknowledges that these claims were not presented in state court but asserts that the "facts underlying the claim are in the state court record and are sufficient to establish both ineffective assistance of trial counsel and prejudice." (ECF No. 36 at 71).

Again, as Nathan failed to present these claims in state court, they have been procedurally defaulted. *See* 28 U.S.C. § 2254(c). The failure to present these issues in state court is particularly important because the court did not develop the record regarding why trial counsel or post-conviction counsel failed to object. However, this Court cannot expand the record since Nathan has not met § 2254(e)(2)'s stringent requirements of cause and prejudice. *See Shinn*, 596 U.S. at 382; *Marcyniuk*, 39 F.4th at 999. Thus, these claims fail because Nathan cannot show that his counsel's failure to object was ineffective or that there was any violation of his due process rights. *See Sloan v. Delo*, 54 F.3d 1371, 1389 (8th Cir. 1995) ("Because Sloan did not challenge the prosecutor's statements using a federal legal theory in the state courts, we cannot consider his claims unless he can either show cause for the default and actual prejudice or demonstrate that a fundamental miscarriage of justice will otherwise result."). Given that Nathan has not demonstrated cause and prejudice, the Court denies relief on Grounds 19 and 20.

Therefore, the Court cannot grant relief under 28 U.S.C. § 2254.

## IV.    Conclusion

Based on the foregoing, the Court finds that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be denied. The Court finds that the state court's findings and conclusions regarding Petitioner's claims were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United

States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Further, because Petitioner has made no showing of a denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Amended Petition under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody (ECF No. 36) pursuant to 28 U.S.C. § 2254 is **DENIED.**

**IT IS FURTHER ORDERED** that the Clerk shall reflect on the docket that David Vandergriff, Warden of the Potosi Correctional Center, and Andrew Bailey, Missouri Attorney General, are the proper respondents pursuant to Fed. R. Civ. P. 25(d).

**IT IS FURTHER ORDERED** that the Nathan has not made a substantial showing of a denial of a constitutional right and this Court will not issue a Certificate of Appealability. A separate Judgment of Dismissal in accord with this Order is entered on this same date.


_____
JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2024.